BANK OF HAWAII, Plaintiff

v.

ROPATI S. PENE and CARMENCITA PENE,
Defendants

High Court of American Samoa
Trial Division

CA No. 28-88

July 18, 1988

Before REES, Chief Justice, TUIAFONO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiff, John Ward
Defendants Ropati S. Pene and Carmencita Pene pro se

On Motion for Summary Judgment:

This case comes to us on plaintiff's motion for summary judgment. We therefore view the facts in the light most favorable to the defendants:

1) On December 22, 1982, plaintiff Bank of Hawaii (hereinafter referred to as the Bank) lent defendants Ropati and Carmencita Pene $5000. The purpose of the loan, according to the application filled out by Mr. and Mrs. Pene, was to finance a "promotional trip." The entire principal amount, plus a finance charge of $270.41, was to have been repaid by March 26, 1983, approximately ninety days after the date of the loan.

2) A 1976 Ford Grenada Ghia 2-door sedan was listed on the loan document as security. The Bank attempted to register its security interest with the appropriate office of the City and County of Honolulu, but was informed that its interest could not be registered without a Hawaii Certificate of Safety Inspection, a certificate of registration, a certificate of ownership, and a notarized bill of sale from the previous owners to Mr. and Mrs. Pene. The City and County office also noted that in the document of sale submitted with the proffer of registration the seller's signature "does not appear similar to specimen on file."

3) The Bank has submitted an affidavit stating "Bank records clearly reveal" that Mr. Pene "did not assist in the Bank's efforts to protect it's [sic] security interest in the vehicle . . . ." The Bank has not, however, provided the Court with copies of those records or even given us any details about what records they are or exactly what they say Mr. Pene did and did not do. We are unable to accept the Bank's conclusory character- ization of its unidentified records as evidence, so we assume for the purpose of this motion that the failure to perfect the security interest was through no fault of Mr. or Mrs. Pene. (The Bank does produce evidence that Mr. and Mrs. Pene did

31

not secure comprehensive and collision damage insurance on the automobile, but produces no evidence that they were under any obligation to secure such insurance.)

4) Mr. and Mrs. Pene did not repay the loan when it came due on March 26, 1983.

5) When no payments had been made by December 21, 1983, the loan was transferred from the Pearl City branch of the Bank to the Loan Adjustment Department for collection.

6) At some time during 1983, or perhaps shortly thereafter, a man from the Loan Adjustment Department whose name Mr. Pene does not recall visited him at his home in Hawaii. Mr. Pene told the Loan Adjustment man he had no intention of paying the loan. Mr. Pene's presentation was quite forceful; among the topics discussed was Mr. Pene's belief that the Bank of Hawaii was to blame "for the ultimate decay/deterioration of his [Mr. Pene's] business associate and Employer, Reverend Lemuelu Utu." Mr. Pene did, however, offer to "surrender" the 1976 Ford to the Bank. The Bank representative never agreed to this proposal, at least not in so many words. However, at the end of the discussion Mr. Pene had the impression that the Bank representative was "quite happy" the Bank would be getting the car, since otherwise it would get nothing at all.

7) The Bank never took the car. On this point the Bank's statement about what its records show is buttressed by the undisputed evidence that the security interest, for whatever reason, was never perfected. Under these circumstances the Bank's statement that it did not take the car is highly credible. Mr. Pene, moreover, testified that he never checked to see whether the car had been removed from its place on the street.

8) The value of the car in 1983 was no more than $2400. For the purpose of this motion we accept as true Mr. Pene's statement that he also left $3500 worth of radio equipment in the car, on the street, for the Bank to take, and never checked to see whether the Bank had taken it.

9) Shortly thereafter Mr. and Mrs. Pene moved to Samoa.

32

10) On February 25, 1985, Mrs. Pene responded to a Bank collection letter with a handwritten note acknowledging the debt but explaining that she and her husband were in difficult financial circumstances. She asked to be allowed to pay $100 monthly until she and her husband could find employment and increase the payments. For the purpose of this motion we accept as true Mr. Pene's statement that he knew nothing of his wife's letter.

11) Four payments in a total amount of $250 were made between March and August of 1985. We have been presented with no evidence about who made these payments.

Even on this version of the facts --- laden almost to the breaking point with assertions by Mr. Pene which we now accept as true but which would be most difficult to prove at trial --- the Court is bound to grant the motion for summary judgment.

The principal defense is that the conversation about the car between Mr. Pene and the Loan Adjustment representative was a settlement of the debt. If an officer of the Bank with real or apparent authority to make such a settlement had affirmatively agreed to Mr. Pene's proposal that the Bank would take the car from the street and thereby absolve the Penes from further liability, the defense would be valid. Even if such a representative had not affirmatively agreed to the proposal, he might have bound the Bank by speaking or acting in a way that would lead a reasonable person to believe he had agreed to it. In this case, however, the proposal itself was not one that a reasonable person would assume was accepted unless such acceptance was clear and explicit.

The Bank had the legal right to repossess the car, sell it (assuming it could have perfected its security interest), and still hold the Penes for any remaining balance on the debt. The car itself was worth far less than the amount of the loan, and although we assume the existence of $3500 worth of radio equipment we have been presented with no evidence that any representative of the Bank had ever appraised it or even seen it. Moreover, even if the "official" retail value of the car and its contents was $5900 (the most generous estimate we can make on the present record) the Bank would have been likely to realize somewhat less than $5500

33

from their sale. Nor was this was a situation in which the creditor had sold the car to the debtor and in which repossession, if it had occurred, might conceivably have been construed as evidence of the seller's intention to rescind the sale. The car appears to have belonged to Mr. Pene before he applied for the loan and to have been unrelated to the loan except as collateral security. Under these circumstances it would have been irrational for the Bank to release the Penes from liability when it could have taken the car without any such release.

We can easily believe that the Bank representative was daunted and discouraged by his conversation with Mr. Pene. He might even have been convinced that the car was the most the Bank would ever recover. That is not a "settlement," however, and no reasonable person would regard it as such. We assume today, as we must, that Mr. Pene emerged with the subjective impression that he had been released from liability. When two parties to a transaction differ in their impressions of it, a court will not automatically enforce either party's subjective impression but must attempt to determine from all the circumstances of the transaction which impression was more reasonable. Even on Mr. Pene's own version of the facts, no reasonable person would have been justified in assuming that the Bank was surrendering any of its legal rights.[1]

---

[1] During whatever time he remained in Hawaii, moreover, Mr. Pene might have sought to confirm or correct his impression that his "surrender" had been accepted by the simple expedient of occasional visits to the spot in which he had left his car and its valuable electronic accessories. A reasonable person, or even a moderately curious unreasonable person, would certainly have done this. Mr. Pene testified that he did not.

If we could conclude on the present record that there was the slightest possibility the Bank had actually taken possession of the car, we would deny this motion in order to determine at trial whether this had happened and if so whether the Bank had disposed of the car in a commercially reasonable manner and

Mr. Pene also suggests that the loan document is inadmissible as evidence because it contains his signature and that of his wife but no signature from a representative of the Bank. He suggests further that the loan application is inadmissible because it is only an application. We know of no basis for these contentions in the law of evidence. It is, in any case, undisputed that the Bank lent Mr. and Mrs. Pene $5000 and that Mr. and Mrs. Pene actually received the money.

The Bank notes that the annual interest rate of twenty-one per cent is legal in Hawaii where the loan was made but that only eighteen per cent interest is being sought in this action. In the loan application Mr. Pene designated himself as "self employed" and said the loan was for a "promotional tour." The loan was therefore "solely for the purpose of carrying on or acquiring a business or commercial investment" within the meaning of A.S.C.A. § 28.1503 and the eighteen per cent maximum rate applies.

Finally, at the hearing on this motion Mr. Pene also expressed his desire to go to trial in order to prove the Bank of Hawaii responsible for the death of Reverend Utu. This contention, if true, would seem to give the heirs of Reverend Utu a cause of action for his wrongful death. That action has not, however, been shown to be so closely related to this one that it could be raised as a defense or counterclaim, notwithstanding Mr. Pene's observation that the loan application designates Reverend Utu as the person who referred Mr. Pene to the Bank in the first place.

Since we hold for the Bank on the ground that Mr. and Mrs. Pene borrowed the money and never repaid it by settlement or otherwise, we need not reach the question whether Mrs. Pene's admission of liability would have revived her obligation if there had been a settlement.

Judgment will enter for the Bank against Mr. and Mrs. Pene for the remaining principal balance of $4750; accrued interest on the unpaid balance at

how such disposition affected the amount the Penes owed the Bank. There is, however, no evidence to suggest such a possibility.

35

eighteen per cent from the date of the loan until the date of judgment; court costs; reasonable attorney fees and costs of collection as provided for in the loan agreement and to be proved by affidavit; and post-judgment interest at the rate of twelve per cent.

It is so ordered.